UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MCINNIS USA INC.,


– against –                          **NOT FOR PUBLICATION**

                                     **MEMORANDUM & ORDER**

ALL AMERICAN TRANSIT MIX CORP.
                                     21-cv-221 (ERK-VMS)
                    Defendants.


KORMAN, *J*.:

     Plaintiff McInnis USA Inc. ("McInnis") sued defendant All American Transit
Mix Corp. ("AATM") to recover damages flowing from AATM's alleged failure to
pay for approximately $280,000 of cement McInnis sold to AATM. The complaint
alleged causes of action for breach of contract, unjust enrichment, and account
stated. On May 2, 2022, the parties agreed to the material terms of a settlement.
Silverman Decl. ¶ 3 & Ex. A. AATM agreed to (i) pay to McInnis $75,000 in eight
monthly installments and execute a confession of judgment in connection with that
amount, and (ii) pay to McInnis twenty percent of any recovery, not to exceed
$200,187.37, that AATM obtained in connection with a separate lawsuit it
maintained in state court. *Id.* McInnis's counsel, Zachary W. Silverman, sent an
email to AATM's counsel, Marc Braverman, to memorialize this agreement. *Id.*

On May 9, 2022, Silverman emailed Braverman a proposed settlement agreement consistent with the parties' May 2 agreement. *Id.* ¶ 4 & Exs. C-D. Braverman responded via email with AATM's proposed changes. *Id.* ¶ 5 & Exs. C, E. On May 17, Silverman returned to Mr. Braverman a copy of the agreement incorporating verbatim all of AATM's proposed changes and executed by McInnis. *Id.* ¶ 6 & Exs. C, F ("Settlement Agreement"). The Settlement Agreement principally provides for: (1) an initial $10,000 payment from AATM to McInnis to be made within seven days of its effective date, and a second $10,000 payment to be made no later than June 15, 2022; (2) dismissal of this action (including AATM's counterclaim) with prejudice within five days of the first payment; and (3) McInnis to file a confession of judgment to be executed by AATM simultaneously with the Settlement Agreement for $75,000 less the amounts of any installments that AATM had already duly and timely paid. Decl. Ex. F at 1-4.

On May 19, Braverman suggested to Silverman that the parties "inform the court that [they] have a settlement in principle." Decl. Ex. G at 14. With Braverman's approval, *id.* at 12, Silverman filed a notice informing the court of this the next day, stating that "the parties have reached a settlement agreement" and that they "anticipate[d] that a formal agreement will be fully executed in the next few days." ECF No. 21.

On May 23, 2022 Silverman emailed Braverman asking when McInnis could "expected to receive the countersigned settlement agreement. Decl. Ex. G at 11. Braverman responded stating that his client wanted to "add a clause or sign a side letter" adding new material terms to the Settlement Agreement. Decl. Ex. G at 10. Silverman replied that the parties had already reached an agreement, and that McInnis had already accepted AATM's changes and signed. Decl. Ex. G at 10. Silverman did not receive a response, and emailed Braverman again on May 25 and May 27 asking when McInnis would send the countersigned Settlement Agreement. Decl. Ex. G at 9. Braverman responded by asking about the potential side letter, but did not provide an update on the countersigned Settlement Agreement. Decl. Ex. G at 8.

On June 1, 2022, Braverman informed Silverman by email that AATM would countersign the Settlement Agreement if McInnis agreed to the separate agreement. Decl. Ex. G at 6. When Silverman asked for further clarification, Braverman stated in an email the following day that this statement was "*not* an ultimatum" and that he would speak to his client that day about the status of the agreement. Decl. Ex. G at 4-5 (emphasis in original). On June 6, Braverman emailed Silverman stating that his "client is signing the settlement agreement" and that he "expect[ed] to have it" the next day. Decl. Ex. G at 3. McInnis did not receive the countersigned agreement

3

from AATM, and Braverman did not follow up on Silverman's further email regarding its status. *See* Decl. Ex. G at 1-2.

On June 16, 2022, Silverman emailed Braverman stating that the first two $10,000 installments that AATM owed to McInnis under the Settlement Agreement were past due. *See* Decl. Ex. H. Braverman did not respond to this email, and AATM has not remitted any payments to McInnis under the Settlement Agreement.

On July 8, 2022, McInnis filed a letter requesting leave to file their motion to enforce the Settlement Agreement unopposed because AATM failed to serve its opposition brief by the July 7 deadline. *See* ECF No. 25. I granted McInnis' request on July 11. AATM has not served its opposition nor filed any other papers on the docket since that time. Over five months have passed since the court-ordered deadline for AATM to serve or file its opposition to McInnis' motion, and AATM has failed to do so. As a consequence, the motion is deemed fully briefed without opposition, and McInnis' factual allegations with respect to this motion will be deemed uncontested.

## LEGAL STANDARD

McInnis argues that New York law applies here, because AATM is a New York corporation, the underlying contract has a New York choice of law provision, the breach allegedly occurred in New York, and AATM's counterclaim alleges damages suffered in New York. In any event, the question of choice of law is inconsequential,

4

as the Second Circuit has held that "there is no material difference" between New York law and federal common law with respect to the enforcement of settlement agreements. *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997); *see also Powell v. Omnicom*, 497 F.3d 124, 129 n.1 (2d Cir. 2007) (noting that "New York and federal common law [applied] interchangeably" in the context of enforcing a settlement).

"Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). The parties retain the freedom to contract orally "even if the parties contemplate a writing to evidence their agreement." *Id*. "In such a case, the mere intention to commit the agreement to writing will not prevent contract formation prior to execution." *Id*. *Winston* prescribes for consideration four factors when determining "whether the parties intended to be bound in the absence of a document executed by both sides." *Id*. First, "whether there has been an express reservation of the right not to be bound in the absence of a writing;" second, "whether there has been partial performance of the contract;" third, "whether all of the terms of the alleged contract have been agreed upon;" and fourth, "whether the agreement at issue is the type of contract that is

usually committed to writing." *Id*. (citing Restatement (Second) of Contracts § 27 cmt. c (1981)).

## DISCUSSION

### I.    Each Of the Four *Winston* Factors Weighs in Favor Of Enforcing the Settlement Agreement

In this case, each of the four *Winston* factors favors enforcement of the Settlement Agreement, and is addressed in turn.

#### A. AATM did Not Expressly Reserve its Right Not to be Bound in the Absence of an Executed Writing

Courts have noted that the first *Winston* factor—whether there has been an express reservation of the right not to be bound in the absence of a writing—is "the most important." *Adjustrite Sys., Inc. v. GAB Bus. Servs. Inc.*, 145 F.3d 543, 549 (2d Cir. 1998) (emphasizing the importance of the language of the agreement); *United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less*, 423 F. Supp. 2d 14, 26 (E.D.N.Y. 2006) ("*U.S. Currency*") ("Although *Winston* is a balancing test, the first prong, the express reservation not to be bound, is perhaps one factor with the power to tip the scales slightly more than the other three."). The language of the Settlement Agreement does not contain any reservation of rights by AATM not to be bound; nor is there any indication in the correspondence between counsel that AATM intended to reserve such a right. *See Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 249

6

(E.D.N.Y. 2002) (concluding that the first *Winston* factor favored enforcement of a settlement agreement where "neither party expressed a reservation of the right not to be bound in the absence of an executed agreement"). This factor weighs in favor of enforcement of the Settlement Agreement.

### B. The Parties' Settlement Efforts Constitute Partial Performance of the Settlement Agreement

The second *Winston* factor looks to whether there has been partial performance of the contract. Preparation, signing, and delivering settlement materials to opposing counsel constitutes evidence of partial performance, as does "carrying out other terms of settlement." *See Geneva Labs. Ltd. v. Nike W. Afr. Imp. and Exp., Inc.*, 2021 WL 7287611, at *6 (E.D.N.Y. Aug. 16, 2021), *report and recommendation adopted*, 2022 WL 673257 (E.D.N.Y. Mar. 7, 2022) ("*Geneva Labs.*"). Here, the purpose of the Settlement Agreement was to resolve the ongoing lawsuit, and neither party has sought to advance this litigation since the parties agreed to the terms of settlement. *See Alvarez v. City of New York*, 146 F. Supp. 2d 327, 336 (S.D.N.Y. 2001) (observing that there was partial performance where "both sides, relying on the apparent settlement, did not resume active litigation of the case"). And indeed, McInnis sent a signed copy of the Settlement Agreement to AATM after adopting all of AATM's changes to the draft. *See Gordon v. City of New York*, 2015 WL 1514359, at *7 (E.D.N.Y. Apr. 3, 2015) (remarking that there was partial performance where movant's counsel had prepared a stipulation of settlement

and sent it to opposing counsel); *U.S. Currency*, 423 F. Supp. 2d at 29 (finding partial performance where counsel had drafted a stipulation of settlement and mailed it to her counterparty for execution). Therefore, this factor also favors enforcement of the Settlement Agreement.

### C. The Parties Had Agreed to All Terms in the Settlement Agreement

The third *Winston* factor asks whether the parties had agreed on all material terms. *See Ciaramella*, 131 F.3d at 325. The settlement amount is "the single most important term" of a settlement agreement, *Gildea v. Design Distrib., Inc.*, 378 F. Supp. 2d 158, 161 (E.D.N.Y. 2005), and courts will find that this factor favors enforcement where the parties have agreed to the settlement amount, even where the parties are still negotiating additional terms. *See Geneva Labs.*, 2021 WL 7287611, at *7 (recommending enforcement of settlement agreement where the parties had "agreed to all the material terms of settlement").

In this case, both McInnis and AATM had agreed on all material terms, as indicated by McInnis incorporating the changes AATM had made to the draft agreement and sending back a signed execution copy. *See* Decl. Ex. C at 1. The separate "side letter" that AATM sought does not constitute additional unnegotiated terms of the Settlement Agreement, because AATM had already accepted the terms, and AATM's counsel informed McInnis that AATM would be signing the agreement

on or by June 7, 2022. *See* Decl. Ex. G at 3. This factor also weighs in favor of enforcement.

### D. The Settlement Agreement is the Type of Contract Usually Committed to Writing

Settlement agreements are typically committed to writing. *See Aguiar v. New York*, 356 F. App'x 523, 525 (2d Cir. 2009) (summary order). Indeed, the Settlement Agreement in this case was committed to writing, and the fact that the agreement had not been formally executed by AATM does not counsel against enforcing it. *See Gordon*, 2015 WL 1514359, at *7 ("[E]ven if the agreement is not deemed to have been fully executed, the fact that it was memorialized in a writing weighs in favor of enforcement."); *Mone v. Park E. Sports Med. & Rehab., P.C.*, 2001 WL 1518263, at *3 (S.D.N.Y. Nov. 29, 2001) (concluding that a settlement agreement was committed to writing for the purposes of the fourth *Winston* factor where defense counsel had created a "complete and formal draft Stipulation of Settlement"); *Alvarez*, 146 F. Supp. 2d at 337 (noting that the fourth *Winston* factor weighed in favor of enforcement of an unsigned written settlement agreement where the "[t]he parties had extensively negotiated the language of the agreement," and the

agreement "was substantially complete"). This factor likewise favors enforcing the Settlement Agreement.

## II.    NY CPLR Rule 2104 does not Apply to the Settlement Agreement

New York CPLR Rule 2104 provides that "[a]n agreement between parties or their attorneys relating to any matter in an action… is not binding upon a party unless it is in a writing subscribed by him or his attorney[.]" This rule does not apply to the Settlement Agreement in the instant case, as New York courts have interpreted CPLR Rule 2104 to allow for the enforcement of unexecuted settlement agreements in cases where "[t]he email exchange" between the parties' attorneys "exhibits offer and acceptance[.]" *Philadelphia Ins. Indem. Co. v. Kendall*, 197 A.D.3d 75, 82 (1st Dep't 2021).[1]

Here, the emails from McInnis' counsel initially containing the outline of terms and subsequently the draft agreement constituted an offer. Decl. Ex. A, C at 2. AATM's counsel emailing the draft back with proposed revisions constituted a counteroffer. Decl. Ex. C at 1. McInnis' counsel accepted that counteroffer by incorporating all of AATM's changes and sending back a version executed by

---

[1] The Second Circuit has not applied CPLR 2104 to settlement agreements in New York. New York federal district courts have observed that CPLR 2104 is "a purely procedural rule," and that the CPLR "only 'govern[s] the procedure in civil judicial proceedings in all courts *of the state*.'" *Mone*, 2001 WL 1518263, at *4 (quoting CPLR § 101) (emphasis added); *see also Grupo Sistemas Integrales De Telecommunicacion S.A. De C.V. v. AT&T Commc'ns, Inc.*, 1994 WL 463014, at *3 n.1 (S.D.N.Y. Aug. 24, 1994) (noting that the Second Circuit applies New York substantive contract law to settlement agreements in federal court).

McInnis. *Id*. And finally, when McInnis' counsel then emailed AATM's counsel stating that he would recommend motion practice to his client unless they received a fully executed settlement by the end of the business day on June 2, AATM's counsel responded four days later that his "client is signing the settlement agreement" and that he "expect[ed] to have it tomorrow." Decl. Ex. G at 3. Thus, there was offer and acceptance of the Settlement Agreement which had been reduced to a writing. *See Rawald v. Dormitory Auth. of the State of N.Y.*, 199 A.D.3d 477, 478 (1st Dep't 2021) (settlement agreement was reduced to writing for the purposes of CPLR 2104 and defendant was bound to in email exchange where plaintiff's counsel wrote, "Please confirm we are settled," and defendant's counsel replied, "Confirmed.").

## CONCLUSION

McInnis' motion to enforce the Settlement Agreement is GRANTED. The Clerk of Court is directed to enter judgment in McInnis' favor and against AATM in the amount of $75,000, reflecting the amount AATM owes to McInnis under the Settlement Agreement.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York                     Edward R. Korman
December 16, 2022                       United States District Judge

11